UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOVAN CLAYBRON,

    Plaintiff,

v.

JODI DEANGELO,
OFFICER MECAJ, and
OFFICER MONTGOMERY,

    Defendants.

Case No. 2:21-cv-11953
District Judge Mark A. Goldsmith
Magistrate Judge Kimberly G. Altman

_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF (ECF No. 15)

### I. Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Jovan Claybron, currently housed at the Woodland Center Correctional Facility ("WCC") in Whitmore Lake, Michigan, filed a *pro se* complaint on August 11, 2021, alleging Eighth Amendment and First Amendment violations. He names Jodi Deangleo, Officer Mecaj, and Officer Montgomery as defendants. (ECF No. 1).

Before the Court is Claybron's motion for injunctive relief, requesting that he be transferred to another facility. (ECF No. 15). For the reasons set forth below, the undersigned RECOMMENDS that the motion be DENIED.

1

## II. Background

The complaint makes following allegations.

On June 15, 2020, Claybron filed a grievance against Mecaj, a WCC corrections officer, for inappropriate touching. (*Id.*, PageID.2), ¶ 8. On June 22, 2020, Montgomery, also a WCC corrections officer, asked Claybron to exit his cell for a cell search, stating "so you like to type . . . grievances on my buddies? [] I'll teach you a lesson!" (*Id.*), ¶¶ 9-10. Montgomery and Mecaj then conducted a search of Claybron's cell "without authorization." (*Id.*), ¶ 11. After searching the cell, Montgomery and Mecaj stated that "this is only the beginning." (*Id.*), ¶ 12. Following the search, Claybron observed that the property in his cell was "in disarray;" his typewriter and glasses were broken; and the majority of his possessions were scattered on the floor, including tableware, utensils, legal transcripts, and clothes. (*Id.*, PageID.3), ¶ 13. After requesting that supervisory staff take pictures of the cell, Claybron filed a grievance regarding the cell search. (*Id.*), ¶¶ 14-22.

On June 24, 2020, Claybron sent Deangelo, Acting Warden of WCC, a letter detailing the damage to his property as a result of the June 22 search, stating that the search had been conducted in retaliation for the June 15 grievance against Mecaj. (*Id.*), ¶ 23. He did not receive a response. (*Id.*), ¶ 24.

On June 29, 2020, Montgomery approached Claybron for a cell search, stating "since you still like filing grievances this time will be worse" and threatened to send him to segregation until a supervising officer intervened. (*Id*., PageID.3-4), ¶¶ 24-28. On July 24, 2020, Montgomery asked Claybron for a pat-down search while Claybron was going through "medline." (*Id*., PageID.4), ¶ 31. Claybron then requested the intervention of a supervising officer who conducted the pat-down himself. (*Id*.), ¶ 32.

On July 25, 2020, Montgomery charged Claybron for disobeying a direct order and refusing a pat-down search. (*Id*.), ¶ 33. The charges were dismissed by a supervising officer. (*Id*.), ¶ 35.

Claybron requests monetary damages and asks the court to enjoin defendants from "their retaliatory conduct" toward him. (*Id*., PageID.6), ¶¶ 45-51.

On September 15, 2021, the case was stayed and referred to the Pro Se Early Prisoner Mediation Program. (ECF No. 5). Claybron filed the instant motion on February 4, 2022. (ECF No. 15). On February 22, 2022, the stay was lifted after parties failed to reach a settlement. (ECF No. 14, PageID.56). On March 4, 2022, the case was referred to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1).

In support of his motion, Claybron states that he was placed in punitive segregation for a Class 1 misconduct on January 4, 2022. (ECF No. 15,

3

PageID.57). He reports that while he completed his sentence by January 22, 2022, he had been told that he was to remain in segregation "per [] Deangelo's order." (*Id.*, PageID.58). He alleges that his continued segregation "clearly violates [Michigan Department of Corrections'] policy." (*Id.*). He states that he is being deprived of his typewriter and legal materials in violation of his right to access the courts, noting that he currently has six "open/pending cases." (*Id.*). He points out that as of the day he filed the motion, the present case was stayed for mediation and that because of his placement in segregation, his "mediation statement and supplements will be missing key elements and key exhibits." (*Id.*, PageID.59). He asks to be "immediately transferred to another facility" because Deangelo "will continue to have her staff deny [him] his legal property and typewriter . . . ." (*Id.*).

### III.    Discussion

As an initial matter, none of the defendants have been served. The Court therefore construes Claybron's *ex parte* motion for injunctive relief as a motion for a temporary restraining order ("TRO"), which is analyzed under the same standard as a motion for preliminary injunction. *Summit County Democratic Cent. & Executive Comm. v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004). Under that standard, the factors are as follows: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent a TRO; (3) whether granting the TRO would cause

substantial harm to others; and (4) whether the public interest would be served by granting the TRO. *Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (internal citations omitted). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).

The Court's consideration of the likelihood of success on the merits factor is hampered by the fact that defendants have not yet been served. Notwithstanding, Claybron's inability to show irreparable injury caused by his segregation defeats his request for injunctive relief. "[E]ven the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.' " *D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). "That factor is indispensable: If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit." *Id.* at 327 (citing *Friendship Material,* 679 F.2d at 103; 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948 (3d ed. 1995 & Supp. 2019) ("Irreparable injury is '[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction[.]' ")). "That's why this circuit has held that a district court abuses its discretion 'when it grants a preliminary injunction without

making specific findings of irreparable injury.' " *Id.* (quoting *Friendship Materials*, 679 F.2d at 105). "Thus, although the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory." *Id.* (Emphasis in original).

Claybron cannot make this showing. First, his assertion that he will experience irreparable harm if he is not moved out of segregation to prepare for an upcoming mediation conference is mooted by the fact that the case is no longer in mediation status.

Second, Claybron has failed to show that his placement in segregation has impeded his ability to prosecute his current claim(s) or access the courts. As noted above, defendants have not yet been served and a scheduling order has not issued. Claybron is not presently required to prepare a dispositive motion or respond to a motion made by the defendants. Therefore, Claybron's current inability to access WCC's legal library does not compromise his case preparation. The current motion for injunctive relief is handwritten but fully legible and cogent which supports a finding that there is no irreparable harm. *See Biron v. Carvajal*, No. 20-CV-2110 (WMW/ECW), 2021 WL 3047250, at *32 (D. Minn. July 20, 2021), *report and recommendation adopted,* No. 20-CV-2110 (WMW/ECW), 2021 WL 4206302 (D. Minn. Sept. 16, 2021) (The plaintiff cannot show irreparable harm by being required to hand-write his court submissions where his "handwritten filings are very legible, well-organized, and cite appropriate legal

6

authority. There is no evidence, nor more than conclusory statements, that Biron will suffer harm as a result of not having access to a typewriter."). Further, even without access to a legal library, Claybron was able to articulate the factual and legal basis for his argument that a transfer to another facility was required.

Third, it is worth noting that Claybron's administrative segregation, lasting from January 22, 2022 to at least the date of this writing, does not implicate a liberty interest, much less constitute the irreparable harm required for injunctive relief.[1] Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (superseded by statute on other grounds). Thus, it is considered an atypical and significant hardship only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Courts in this circuit must consider the nature and duration of a stay in segregation to determine whether it imposes an atypical and significant hardship. *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008). Claybron has not alleged that the nature or duration of his segregation constitutes an atypical hardship which would result in irreparable harm. Short periods of placement in administrative segregation do not require due process protections. *See Joseph v.*

---

[1] Claybron reported that his punitive segregation ended on January 22, 2022. He protests his continued segregation from that point forward. (ECF No. 15, PageID.58).

*Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (holding that 61 days in segregation was not an atypical and significant hardship). Cases finding that a liberty interest was implicated involve much longer periods of segregation. *See, e.g., Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (holding that 13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (holding that eight years of segregation implicates a liberty interest). Claybron's segregation of less than two months does not justify the requested injunctive relief.

While Claybron's failure to show irreparable injury is fatal to his request for injunctive relief, the two remaining factors – substantial harm to others and consideration of the "public interest"– also favor denying his motion. "[T]he interests of identifiable third parties and the public at large weigh against an injunction" in the prison setting. *Theriot v. Woods*, No. 2:18-CV-92, 2019 WL 409507, at *11 (W.D. Mich. Feb. 1, 2019). "Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive." *Id.* "The public welfare therefore militates against the issuance of extraordinary relief [of injunctive action] in the prison context, absent a sufficient showing of a violation of constitutional rights." *Id.* (citing *Glover v. Johnson,*, 855 F.2d 277, 286-87 (6th Cir. 1988)); *see also Lane v. Beavers*, No.

2:19-CV-1793, 2019 WL 3521652, at *6 (S.D. Ohio Aug. 2, 2019), *report and recommendation adopted,* No. 2:19-CV-1793, 2019 WL 6877851 (S.D. Ohio Dec. 17, 2019) ("enjoining prison officials from moving Plaintiff to segregation and keeping him out of plain view from other inmates would undoubtedly remove from prison officials the deference that they are generally afforded in the administration and control of the prison.") (internal citation omitted)). Likewise here, Claybron has not shown that the Court's interference in this aspect of prison administration is warranted.

## VI. Conclusion

For the reasons stated above, it is RECOMMENDED that Claybron's motion for injunctive relief (ECF No. 15) be DENIED.

Dated: March 17, 2022　　　　　　　　　　s/Kimberly G. Altman
Detroit, Michigan　　　　　　　　　　　　KIMBERLY G. ALTMAN
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## **NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of

appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 17, 2022.

                                                      s/Carolyn M. Ciesla
                                                      CAROLYN M. CIESLA