UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOVAN CLAYBRON,

      Plaintiff,

v.

JODI DEANGELO
and OFFICER MONTGOMERY,

      Defendants.

_____/

Case No. 2:21-cv-11953
District Judge Mark A. Goldsmith
Magistrate Judge Kimberly G. Altman

## **REPORT AND RECOMMENDATION ON PENDING MOTIONS**
## **(ECF Nos. 26, 32, 48, 50)**

I.      Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Jovan

Claybron (Claybron), currently incarcerated at the Woodland Center Correctional

Facility (WCC) in Whitmore Lake, Michigan, filed a *pro se* complaint on August

11, 2021, alleging Eighth Amendment and First Amendment violations. He named

Jodi DeAngelo (DeAngelo), Officer Dritan Mecaj (Mecaj),[1] and Officer Emmanuel

Montgomery (Montgomery)[2] as defendants. (ECF No. 1). Under 28 U.S.C. §

_____

[1] Officer Mecaj was dismissed for lack of service. (ECF Nos. 39, 47).

[2] Montgomery has not yet appeared, and it is unclear whether service has been
made.

636(b)(1), all pretrial matters were referred to the undersigned.  (ECF No. 17).

On May 3, 2022, DeAngelo filed a motion to dismiss, or alternatively, for summary judgment on the basis of exhaustion.  (ECF No. 26).  Claybron responded with a motion for the Court to deny DeAngelo's motion, (ECF No. 32), as well as a late response to DeAngelo's motion, (ECF No. 35).  On October 18, 2022, Claybron filed a motion for leave to amend the complaint, based in part on actions taken after the filing of the complaint by several additional defendants, which he seeks to add in this action.  (ECF No. 48).  He attached the proposed amended complaint, with exhibits and proposed summonses, to his motion.  (*Id*., PageID.254-305).  Claybron also filed a motion to dismiss DeAngelo's pending dispositive motion as moot based on the amended complaint, (ECF No. 50), to which DeAngelo responded, (ECF No. 52).

For the reasons that follow, the undersigned RECOMMENDS that Claybron's motion to amend be GRANTED IN PART and DENIED IN PART; DeAngelo's motion for summary judgment be GRANTED; Claybron's motions to deny or dismiss DeAngelo's motion be DENIED; and DeAngelo be DISMISSED from the matter.  If adopted, the case would proceed against Montgomery, and new defendants E. Ransom, Michael Nelson, and Donald Ricumstrict.

## II.    Factual Background

### A.    Allegations Common to the Original and Proposed Amended Complaints

Both the original and proposed amended complaint allege that on June 22, 2020, Montgomery and Mecaj[3] conducted a search of Claybron's cell in retaliation for a grievance Claybron filed against Mecaj on June 15, 2020. (ECF No. 1, PageID.2-3; ECF No. 48, PageID.256). During the search, the officers broke Claybron's typewriter and glasses and left 70% of Claybron's other property on the floor. (ECF No. 1, PageID.3; ECF No. 48, PageID.256). When questioned about this by a sergeant, the officers stated that Claybron's cell was in this condition when they began the search. (ECF No. 1, PageID.3; ECF No. 48, PageID.257). Claybron filed a grievance concerning the search, and on June 24, 2020, wrote a letter to DeAngelo, acting Warden of WCC, regarding same. (*Id.*). DeAngelo did not respond to Claybron's letter or conduct even a minimal investigation into his claims. (*Id.*).

On June 29, 2020, Montgomery approached Claybron for another cell search and when Claybron asked to see a supervisor, Montgomery threatened Claybron with segregation. (ECF No. 1, PageID.4; ECF No. 48, PageID.257). The search and placement in segregation did not take place. (*Id.*). Then, on July 24, 2020, Montgomery asked Claybron to consent to a pat down search while he was on his way to receive medical attention; Claybron withheld consent. (*Id.*). The next day,

---

[3] As noted in footnote one, Claybron failed to have Mecaj properly served and Mecaj has been dismissed.

on July 25, 2020, Montgomery wrote Claybron up for a "major misconduct" for disobeying a direct order based on his refusal of the pat down search.  (ECF No. 1, PageID.4; ECF No. 48, PageID.258).  After review, the major misconduct ticket was dismissed.  (*Id.*).

B.    New Allegations from August 19, 2020 to October 27, 2020

In his proposed amended complaint, Claybron levels additional accusations against Montgomery and other prison officials.  (ECF No. 48).  The newly named defendants are as follows:

- Michigan Department of Corrections (MDOC) Director Heidi Washington (Washington)
- Deputy Warden Melissa Godfrey (Godfrey)
- Assistant Deputy Director Willis Chapman (Chapman)
- Sergeant Smith (Smith)
- Inspector Nelson (Nelson)
- Inspector Ricumstrict (Ricumstrict)
- Sergeant Ransom (Ransom)
- Grievance Coordinator Mikat (Mikat)

Claybron states that on August 19, 2020, Montgomery approached him again to conduct a pat down search.  (*Id.*, PageID.258).  Ransom approached them to see what the issue was and instructed Claybron to comply with Montgomery's order and file a grievance afterward.  (*Id.*).  Claybron was then ordered to "cuff up," and Montgomery charged Claybron with a misconduct, which was elevated by Ransom.  (*Id.*).  When asked why the misconduct was elevated, Ransom responded "[m]aybe some time in segregation will teach you to stop filing grievances on my

4

staff." (*Id.*).  Claybron says that he was wrongly found guilty of the misconduct

and placed in segregation, and that an unnamed hearing officer refused to

investigate his retaliation claims.  (*Id.*).  Claybron appealed the determination to

DeAngelo, who upheld it without investigation.  (*Id.*).  His appeal was also denied

at Step III.  (*Id.*).

Claybron then alleges that on October 27, 2020, he and an officer "packed

and sealed his property while he went on writ to Wayne County jail."  (*Id.*,

PageID.259).  Upon returning, Claybron found that his property had been opened

against WCC policy and that several items were missing or damaged.  (*Id.*).  He

later determined that Inspectors Nelson and Ricumstrict were responsible.  (*Id.*).

Claybron was never reimbursed for his damaged or missing items, nor were his

missing items returned to him.  (*Id.*).

C.     New Allegations from January 4, 2022 Onward

The following allegations occurred after the filing of the complaint.

Claybron alleges that on January 4, 2022, almost five months after the complaint

was filed, he was placed in segregation for class I misconduct, a charge he does not

dispute.  (*Id.*).  Then on January 20, 2022, he was moved from segregation to "a

unit in the facility used to house the most severe mentally ill inmates."  (*Id.*).  On

January 22, 2022, he spoke to Smith, who told Claybron he was to remain there on

DeAngelo's order.  (*Id.*).  Smith then told Claybron he was a "level 4 inmate,"

which is not allowed without an administrate law judge's adjudication. (*Id*.).

Smith told Claybron to take it up with DeAngelo, and stated, "maybe this will

teach you not to file grievances or lawsuits on the Warden." (*Id*.).

In response to these actions, Claybron filed a grievance and sent a kite to

Deputy Warden Melissa Godfrey. (*Id*.). Instead of overturning Smith's actions,

Godfrey sent an email "to all users" stating that Claybron could not possess his

typewriter, television, radio, or trimmers, despite P.D. 04.07.112(B) allowing

inmates to purchase and possess these items. (*Id*., PageID.260-261).

On March 3, 2022, Claybron received an official designation as a "level 4"

inmate from DeAngelo, despite being entitled to "level 1" status. (*Id*.,

PageID.261). Claybron says this was done in retaliation for his filing of the

present lawsuit, and punishes Claybron with "fewer privileges and more

restrictions." (*Id*.). On complaining about this decision, Godfrey told Claybron "if

you dismiss your prior lawsuit we might think about lowering your level next

year." (*Id*.). Godfrey also told Claybron she was "holding on to your property

until you learn to stop filing grievances and lawsuits." (*Id*.).

Claybron asserts that the above facts constitute unlawful retaliation for his

filing of grievances and this lawsuit, that DeAngelo and Godfrey entered into a

civil conspiracy to deprive him of his liberty and property, and that DeAngelo

denied his access to the courts by dismissing every grievance he filed as untimely

and holding his legal mail until it is too late to utilize.  (*Id*., PageID.262).  He also

asserts that Grievance Coordinator Mikat purposely undermined his grievances

beginning on January 27, 2022, acting in concert with DeAngelo.  (*Id*.,

PageID.262-263).  Lastly, he asserts that he wrote to Washington and Chapman

three times in 2022 regarding these issues, and that they failed to conduct even a

"minimal investigation" into the merit of his claims.  (*Id*., PageID.263-264).

### III.    Legal Standards

### A.    Moving for Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be

freely given when justice so requires."  Rule 15(a)(1) allows a party to amend its

pleading once, as a matter of course, but only within 21 days of service of a

responsive pleading or Rule 12(b), (e), or (f) motion.  Rule 15(a)(2) allows that

other amendments may be made with the court's leave, which the court should give

freely when justice so requires.  The Supreme Court has instructed:

> In the absence of any apparent or declared reason – such as undue delay,
> bad faith or dilatory motive on the part of the movant, repeated failure
> to cure deficiencies by amendments previously allowed, undue
> prejudice to the opposing party by virtue of allowance of the
> amendment, futility of amendment, etc. – the leave should, as the rules
> require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Riverview Health Inst. LLC v.*

*Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010).  Rule 15(a) creates a liberal

policy in favor of granting leave to amend and is meant to "reinforce the principle

that cases should be tried on their merits rather than the technicalities of pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982); *see also Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987) (reversing the grant of a motion to dismiss because the district court failed to properly consider claims alleged in a pending motion for leave to amend).

"Despite this policy, denial may be appropriate when there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.' " *Brown v. Chapman*, 814 F.3d 436, 443 (6th Cir. 2016) (quoting *Foman*, 371 U.S. at 182). "To deny a motion to amend, a court must find 'at least some significant showing of prejudice to the opponent.' " *Ziegler v. Aukerman*, 512 F.3d 777, 786 (6th Cir. 2008) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986)).

## B.     Moving to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action ..."). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

C.    Moving for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the

9

light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists...." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Claybron is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, ... 'the liberal pleading standards under [*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512-513 (2002)] and [the Federal Rules] are inapplicable.' " *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

IV.   Discussion

A.   Leave to Amend the Complaint

DeAngelo argues that granting Claybron's motion to amend the complaint would be futile. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Inst., LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (citation and internal quotations omitted). Specifically, she argues that the amended complaint's claims against Washington, Chapman, and DeAngelo are futile in their entirety, and that the conspiracy allegations against all defendants fail to state a claim.[4] (ECF No. 49).

Before reaching these arguments, the undersigned notes that the allegations in the amended complaint span from June 2020 to at least May 2022, and that between October 27, 2020 and January 4, 2022, there do not appear to be actionable claims against Defendants. Courts in similar circumstances have found that *pro se* prisoners' claims separated by long periods of time and presenting different questions of law and fact are improperly joined and severable. *See, e.g.*, *Burley v. Weller*, No. 2:22-CV-10748, 2022 WL 1667028 (E.D. Mich. May 25, 2022); *Lewis v. Greason*, No. 2:21-CV-11939, 2021 WL 4710784 (E.D. Mich. Oct.

---

[4] The undersigned declines to address DeAngelo's arguments against Claybron's conspiracy claims at this time. Those claims arise solely in the portion of the complaint of which the undersigned recommends dismissal for improper joinder, and even if granted, would not result in the dismissal of any singular defendant.

7, 2021); *Person v. Mich. Dep't of Corr.*, No. 2:21-CV-181, 2021 WL 5782473 (W.D. Mich. Dec. 7, 2021).  The undersigned concludes the same, as explained below.

1.    Legal Standard for Improper Joinder

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, and Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Rule 18(a) states: "A party asserting a claim ... may join, as independent or alternative claims, as many claims as it has against an opposing party."

Where a complaint names multiple defendants, a court first looks to Rule 20 to determine whether the joinder of defendants was proper:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action.  It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates

12

independently of Rule 18. . . .

Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), quoted in *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009).

Thus, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, " 'the time period during which the alleged acts occurred; whether the acts ... are related; whether more than one act ... is alleged; whether the same supervisors were involved[;] and whether the defendants were at different geographical locations.' " *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

In determining which claims should survive, the common practice is to see which transactions sufficiently relate to those that are alleged to occur first in time, allowing claims based on those transactions to go forward. *See, e.g.*, *Burley*, 2022

13

WL 1667028; *Lewis*, 2021 WL 4710784; *Person*, 2021 WL 5782473.

2.    Application

Here, the events alleged in ¶¶16-44 of the proposed amended complaint are sufficiently related so as to be joined in one action. (ECF No. 48, PageID.256-259). These allegations concern events that took place beginning on June 22, 2020, with Montgomery and Mecaj's search of Claybron's cell and destruction of his property in retaliation for a grievance filed against Mecaj seven days prior. (*Id*., PageID.256). These are the acts described in Claybron's original complaint as well. *See* ECF No. 1. From there, Claybron describes several further retaliatory acts from Montgomery as summarized above, DeAngelo's failure to investigate Claybron's claims as to Montgomery, and Ransom's retaliatory escalation of Montgomery's misconduct ticket against Claybron. (*Id*., PageID.256-259). These claims also include Claybron's accusation that at some time between October 27, 2020 and February 19, 2021, Nelson and Ricumstrict opened, stole, and destroyed Claybron's sealed property. (*Id*., PageID.259). These transactions relate back to those previously described, as Claybron alleges that they were done in retaliation for his previously filed grievances. (*Id*.).

In the later paragraphs of the proposed amended complaint, Claybron describes events that occurred on or after January 4, 2022. (*Id*., PageID.259-264). The unlawful acts described therein are said to be in retaliation for Claybron's

14

filing of this complaint (on August 11, 2021), and for grievances filed against DeAngelo.  As will be discussed below, Claybron did not file a grievance against DeAngelo, if at all, before September 17, 2021.  *See* ECF No. 26-3.

Despite the commonality of the transactions alleged in the initial lawsuit and the retaliation for filing this lawsuit, the transactions beginning in 2022 are not sufficiently related for joinder.  The common thread for those transactions is retaliation from a separate group of defendants—Smith, DeAngelo, Godfrey, Mikat, Washington, and Chapman—for acts that Claybron took against DeAngelo, *not Montgomery*, and these transactions are separated from the prior ones by over a year.  *See Lewis*, 2021 WL 4710784, at *4 (dismissing claims that "involve[d] a different time period, unrelated acts, unrelated Defendants, and different facilities. . . .").

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action."  *Id*.  Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately.  *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572-73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time....' ") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989));

*Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate.").

Here, the appropriate remedy is to accept Claybron's claims described in ¶¶16-44 of the proposed amended complaint, (ECF No. 48, PageID.256-259), which assert claims against Montgomery, Ransom, Nelson, and Ricumstrict, and to dismiss those described thereafter, against Smith, DeAngelo, Washington, Godfrey, Chapman, and Mikat without prejudice.  This will not prevent Claybron from proceeding on those claims in a separate action, as the undersigned recommends dismissal of Claybron's claims that began in 2022, and civil rights suits filed in Michigan under § 1983 have a three-year statute of limitations. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).  Thus, the undersigned RECOMMENDS that Claybron's motion for leave to amend the complaint be GRANTED IN PART and DENIED IN PART, with reference to the paragraphs of the proposed amended complaint described above.

B.     Exhaustion of Claims against DeAngelo

16

1.    Legal Standard

The PLRA requires prisoners to "properly" exhaust all "available" administrative remedies prior to filing a lawsuit challenging prison conditions.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006).  Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and citations omitted).  Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record.  *Jones v. Bock*, 549 U.S. 199, 204 (2007).  The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."  *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).  But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so."  *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969

(E.D. Mich. Mar. 18, 2015).  Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice.  *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve prisoner grievances.  "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance."  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).  As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors."  *Woodford*, 548 U.S. at 94.  To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory."  *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007).  Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint."  *Id.*

Under MDOC PD 03.02.130, prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue

being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC PD 03.02.130 ¶ S (underscoring omitted).

Furthermore, MDOC PD also 03.02.130 sets forth time limits regarding the three-step grievance process.

> Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, and then may file a Step I grievance about any unresolved issues with a grievance coordinator within five business days of the attempted informal resolution. (*Id*. at ¶¶ Q, W.) If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. (*Id*. at ¶¶ U, DD.) If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same procedure. (*Id*. at ¶¶ U, HH.) The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. (*Id*.)

*Moses v. Campbell*, No. 20-cv-13366, 2022 WL 2805145, at *3 (E.D. Mich. July 18, 2022). "Step III grievances are 'generally' responded to within sixty (60) days." *Johnson v. Burt*, No. 1:20-cv-802, 2021 WL 3476449, at *3 (W.D. Mich. June 14, 2021), *report and recommendation adopted*, 2021 WL 3473483 (W.D. Mich. Aug. 6, 2021) (citing MDOC PD 03.02.130 ¶ II). "The grievance process is exhausted once the final response is issued in Step III." *Parker v. Turner*, No. 20-12794, 2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).

2.    Application

DeAngelo argues that because the original complaint contained no exhausted claims against her, Claybron may not amend the complaint to add additional claims, whether exhausted or not, against her.  In *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017), the Sixth Circuit held that "that the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim."  There, in allowing the plaintiff to supplement the complaint with exhausted claims, the Sixth Circuit distinguished its prior rulings in *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) and *Cox v. Mayer*, 332 F.3d 422, 428 (6th Cir. 2003), noting that plaintiffs in those cases "had not properly exhausted *any* claims before filing the original complaint."  *Mattox*, 851 F.3d at 594 (emphasis in original).  Defendants do not argue that the additional claims in the proposed amended complaint are unexhausted.

Additionally, the undersigned notes that she recommends dismissal of certain claims in the proposed amended complaint as described above.  If adopted, the only remaining claims against DeAngelo, Montgomery, Ransom, Nelson, and Ricumstrict will be those involving events that occurred between June 22, 2020 and October 27, 2020.  In DeAngelo's original motion for summary judgment on the basis of exhaustion of administrative remedies, DeAngelo attached a Step III

Grievance Report dated September 17, 2021.  (ECF No. 26-3).  To that date, the only relevant grievance that had been filed was PRF-20-06-0120-19E (PRF-120).

Generally, an "amended complaint supersedes the original complaint, thus making the motion to dismiss the original complaint moot."  *Ky. Press Ass'n v. Kentucky*, 355 F. Supp. 2d 853, 857 (E.D. Ky. 2005) (citing *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) (holding that the amended complaint supersedes all previous complaints and becomes the operative pleading)); *see also Glass v. Kellogg Co.*, 252 F.R.D. 367, 368 (W.D. Mich. 2008) ("Because the original complaint has been superseded and nullified, there is no longer a live dispute about the propriety or merit of the claims asserted therein; therefore, any motion to dismiss such claims is moot." (internal footnote omitted)). That said, "[i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading."  *Yates v. Applied Performance Techs.*, 205 F.R.D. 497, 499 (S.D. Ohio 2002) (citations omitted).

Here, DeAngelo's motion based on lack of exhaustion fully applies to the parts of the proposed amended complaint that the undersigned recommends be granted and adopted.  Therefore, the undersigned will consider the merits of that motion as it relates to the exhaustion of administrative remedies against DeAngelo.

Here, the relevant grievance at Step I is "a Retaliation grievance against C/o

Montgomery and C/o Mecaj," which does not complain of any acts by DeAngelo or mention her by name.  (ECF No. 26-3, PageID.138).  The grievance was denied at Step I, and then denied by DeAngelo at Step II on August 20, 2020, with her stating that "Upon investigation and interview with staff, all staff concur[r]ed that the room was in disarray when they entered for the search.  Officers Montgomery and Mecaj both denied damaging any of the grievant[']s property[.]"  (*Id*., PageID.137).  At Step III, Claybron complained that "[t]he Warden did not investigate this matter, so her response is invalid."  (*Id*., PageID.136).  His Step III appeal was denied on December 1, 2020, by the Office of Legal Affairs.  (*Id*., PageID.135).

Claybron argues that his claims against DeAngelo should be considered exhausted even though the relevant grievance does not state DeAngelo by name at Step I.  The general rule is that a prisoner "does not exhaust his administrative remedies under the PLRA . . . when he does not specify the names of each person from whom he seeks relief."  *Mattox*, 851 F.3d at 591.  But there are exceptions to this rule, one of which is that "prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits."  *Id*.  Invoking this exception, Claybron cites *Kirschke v. Schooley*, No. 20-11118, 2022 WL 2192927 (E.D. Mich. June 17, 2022), which in turn relies on the unpublished Sixth Circuit case of *Holloway v. McLaren*, No. 15-2184, 2016 U.S. App. LEXIS

14644 (6th Cir. 2016).[5]  *Kirschke* accurately summarizes *Holloway* as follows:

> In *Holloway*, the inmate plaintiff filed a grievance against one prison official.  The plaintiff exhausted that grievance through Step III but did not identify any other officials during the process.  The plaintiff brought a lawsuit against MDOC defendants who were not named in the grievance.  The defendants argued that because he did not identify the defendants in the grievance, he failed to exhaust administrative remedies against them.  The Sixth Circuit disagreed.  The Court held "[b]ecause MDOC officials addressed the merits of the [Plaintiff's] grievance at each step and did not enforce any procedural requirements, [Plaintiff's] failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion."

*Kirschke*, at *6 (quoting *Holloway*, at *5) (brackets in original).  Following this guidance, the *Kirschke* court found that claims against a Resident Unit Manager at the prison facility were fully exhausted, despite him not being named in a Step I grievance against five other named prison officials.  *Kirschke*, at *6.

Other courts have found that where there is no apparent procedural defect to a grievance reviewer, because other defendants were named at Step 1, the failure to name the party in question is not waived.  *See, e.g.*, *Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *11 (E.D. Mich. Mar. 31, 2016).  This interpretation is more in line with the Sixth Circuit's later, published opinion in *Mattox v. Edelman*.

Here, like in *Johannes*, there is no complaint in the grievance of a facility-

---

[5] Unavailable on Westlaw.

wide issue that could prompt a grievance reviewer to reject the grievance for failure to name DeAngelo.  And while DeAngelo is named in the Step III appeal for failure to investigate the underlying matter in her Step II determination, § 1983 liability cannot be premised upon the decision to reject a grievance.  *See Shehee v. Lutrell,* 199 F.3d 295, 300 (6th Cir. 1999); *Alder v. Corr. Med. Servs.,* 73 F. App'x 839, 841 (6th Cir. 2003); *Martin v. Harvey,* 14 F. App'x 307, 309 (6th Cir. 2001). Furthermore, a defendant must be named at Step I to be exhausted.  *Alexander v. Jackson*, 440 F. Supp. 2d 682, 689 (E.D. Mich. 2006) (citing *Burton v. Jones*, *supra*).

As DeAngelo has not been named in a relevant grievance as of September 17, 2021, and the MDOC did not waive this procedural defect, as described above, she should be dismissed from this matter.  Accordingly, the undersigned RECOMMENDS that DeAngelo's motion for summary judgment, (ECF No. 26), be GRANTED, and that Claybron's motions to deny or dismiss that motion, (ECF Nos. 32, 50), be DENIED.

C.     Claims against Washington and Chapman

DeAngelo also argues that Washington and Chapman should be dismissed for lack of personal involvement in Claybron's alleged constitutional violations. The only claims against Washington and Chapman occur in the portion of the proposed amended complaint of which the undersigned recommends dismissal for

improper joinder. However, should this recommendation not be adopted, the undersigned recommends dismissal of Washington and Chapman for failure to state a claim.

### 1. Legal Standard

It is well-established that liability under § 1983 must be based on more than merely the right to control employees. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325-326 (1981); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694-695 (1978). To make out a claim under § 1983, a plaintiff must allege that "each defendant officer, through his or her own individual actions, *personally violated* plaintiff's rights under clearly established law." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (emphasis in original). "It is well-settled that '[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior*.' " *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). The Sixth Circuit "ha[s] long held that supervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor." *Peatross*, 818 F.3d at 241 (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

The requirement of active unconstitutional behavior is met when a person " 'directly participated' in the alleged misconduct, at least by encouraging, implicitly

authorizing, approving or knowingly acquiescing in the misconduct, if not carrying

it out himself." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013).  At the

very least, a supervising official must have "had knowledge of the offending

employee's conduct at a time when the conduct could be prevented, or that such

conduct was otherwise foreseeable or predictable." *Nouri v. Cnty. of Oakland*, No.

2:10–cv–13700, 2013 WL 474522, at *6 (E.D. Mich. Feb. 4, 2013).

### 2.    Application

Claybron alleges that he sent Washington and Chapman letters on February

15, April 29, and May 9 of 2022, explaining how his rights were being violated by

their subordinates.  (ECF No. 48, PageID.263-264).  Defendants argue that this

fails to state how Washington or Chapman were personally involved in any

unconstitutional conduct, and that Claybron does not make any specific allegations

as to how they "either encouraged the specific incident of misconduct or in some

other way directly participated in it." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th

Cir. 1999) (internal quotation omitted).

Claybron argues that the Sixth Circuit has not decided whether an official

can be culpable for ignoring information about a constitutional wrongdoing.  (ECF

No. 50, PageID.321).  On the contrary, this is exactly the sort of "failure to

supervise" that is insufficient to sustain a § 1983 claim.  *See Shehee*, 199 F.3d at

300.  In *Shehee*, the defendants rejected the plaintiff's grievances regarding

unconstitutional conduct and thus "knew of the alleged violations against [the plaintiff], but failed to act when the situation was in their control." *Id*. The Sixth Circuit rejected the District Court's conclusion that this demonstrated an acquiescence in the unconstitutional conduct. *Id*. A failure to intervene to prevent unconstitutional conduct, even after informed of such conduct, is not actionable under § 1983.

Claybron cites *Siggers-El v. Barlow*, 412 F.3d 693, 699–700 (6th Cir. 2005) for the proposition that petitioning a prison officer's supervisor is protected conduct, and therefore gives that supervisor a "duty to conduct at least a 'minimal investigation' to determine whether there was any merit" to his claim. (ECF No. 50, PageID.321). However, this duty does not follow from Claybron's right to send letters to officers' supervisors and would fly in the face of direct Sixth Circuit precedent to the contrary. As such, Claybron's proposed amendment to name Washington and Chapman as additional defendants would be futile. Therefore, if the proposed amended complaint is adopted as a whole contrary to the recommendation of the undersigned, it is recommended that Washington and Chapman be dismissed from the complaint for failure to state a claim.

## V.    Conclusion

For the reasons stated above, the undersigned RECOMMENDS that Claybron's motion to amend, (ECF No. 48), be GRANTED IN PART and

DENIED IN PART; DeAngelo's motion for summary judgment, (ECF No. 26), be

GRANTED; Claybron's motions to deny or dismiss DeAngelo's motion, (ECF

Nos. 32, 50), be DENIED; and DeAngelo be DISMISSED from the matter.

If adopted, the case would proceed against Defendants Montgomery,

Ransom, Nelson, and Ricumstrict,[6] and the undersigned would RECOMMEND

that: (1) Claybron be ordered to file a new amended complaint naming

Montgomery, Ransom, Nelson, and Ricumstrict as defendants and containing only

the factual allegations in paragraphs 16-44 of the proposed amended complaint;

and (2) send completed service documents to the Clerk's office for service on the

new Defendants: Ransom, Nelson, and Ricumstrict. Claybron should also be

directed to complete service documents for service on Montgomery, as he may not

have been served properly initially, *see* n.2, *supra*.


Dated: December 9, 2022                          s/Kimberly G. Altman
Detroit, Michigan                                KIMBERLY G. ALTMAN
                                                 United States Magistrate Judge

## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and

Recommendation. Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

---

[6] The undersigned expresses no opinion at this time on the merits of these claims.

28

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to

their respective email or First Class U.S. mail addresses disclosed on the Notice of
Electronic Filing on December 9, 2022.

s/Carolyn M. Ciesla
CAROLYN M. CIESLA
Case Manager