UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOVAN CLAYBRON,

    Plaintiff,

v.

OFFICER MONTGOMERY, MICHAEL
NELSON, DONALD RICUMSTRICT,
and E. RANSOM

    Defendants.

_____/

Case No. 2:21-cv-11953
District Judge Mark A. Goldsmith
Magistrate Judge Kimberly G. Altman

**REPORT AND RECOMMENDATION
TO GRANT IN PART AND DENY IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON THE BASIS OF EXHAUSTION (ECF No. 72)**[1]

I.    Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Jovan Claybron (Claybron), currently incarcerated at the Woodland Center Correctional Facility (WCC) in Whitmore Lake, Michigan, filed a *pro se* complaint on August 11, 2021, alleging Eighth Amendment and First Amendment violations. Following early motion practice and the filing of an amended complaint, the remaining

---

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

1

defendants are Emmanuel Montgomery (Montgomery), Michael Nelson (Nelson), E. Ransom (Ransom), and Donald Ricumstrict (Ricumstrict). *See* ECF No. 57, Amended Complaint. Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned. (ECF No. 17).

Before the Court is defendants' motion for summary judgment on the basis of Claybron's failure to exhaust administrative remedies. (ECF No. 72). The motion is fully briefed, (ECF Nos. 76, 77), and ready for consideration.

For the reasons that follow, the undersigned RECOMMENDS that defendants' motion for summary judgment be GRANTED IN PART and DENIED IN PART. If this recommendation is adopted, claims based on the following incidents would remain against the following defendants:

| **Incident** | **Defendant(s)** |
|---|---|
| June 22, 2020 retaliatory cell search | Montgomery |
| July 25, 2020 retaliatory misconduct ticket | Montgomery |
| Damaged and missing property while Claybron was away on writ | Nelson and Ricumstrict |

Claims based on the following incidents and involving the following defendants would be DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies:

| **Incident** | **Defendant(s)** |
|---|---|
| Various threatened pat-down searches | Montgomery |
| August 19, 2020 retaliatory misconduct ticket | Montgomery and Ransom |

Further, if this recommendation is adopted, the undersigned will issue a scheduling order to allow for discovery on the merits of Claybron's remaining claims.

II.   Background

A.   Procedural History

Although this case has been pending for some time, an overview of the procedural history shows that the case has progressed, even if slowly.

This case began on August 11, 2021, when Claybron filed his original complaint naming Warden Jodi DeAngelo (DeAngelo), Corrections Officer Mecaj (Mecaj), and Montgomery as defendants. (ECF No. 1). The case was stayed for *pro se* prisoner mediation. (ECF No. 13). A mediation was held on February 22, 2022, which did not result in a settlement. That day, an order lifting the stay was entered and service was directed on defendants. (ECF No. 14).

Prior to mediation, on February 2, 2024, Claybron filed a motion for early injunctive relief. (ECF No. 15). On March 17, 2022, the undersigned issued a report and recommendation, recommending that the motion be denied. (ECF No. 19). On May 27, 2022, the district court adopted the recommendation and denied the motion. (ECF No. 31).

3

Meanwhile, on March 1, 2023, also prior to service, Claybron filed a motion for the appointment of counsel, (ECF No. 18), which the undersigned denied on March 17, 2022, (ECF No. 20).

On March 31, 2022, a waiver of service was returned as to DeAngelo, with an answer due by May 2, 2022. (ECF No. 21). On May 3, 2022, DeAngelo filed a motion to dismiss for failure to state a claim or, alternatively, for summary judgment for lack of exhaustion. (ECF No. 26).

Around the same time, the undersigned ordered Claybron to show cause why Mecaj should not be dismissed for Claybron's failure to serve him. (ECF No. 37). Claybron did not respond to the order by the response date. On August 25, 2022, the undersigned issued a report and recommendation that Mecaj be dismissed. (ECF No. 39). The recommendation was adopted on October 5, 2022. (ECF No. 47).

A waiver of service as to Montgomery was returned on September 14, 2022, with an answer due on October 5, 2022. (ECF No. 46). However, the returned waiver of service was not signed and did not show that Montgomery had been personally served.

On October 18, 2022, Claybron moved for leave to amend the complaint. (ECF No. 48). He sought to keep DeAngelo in the case, add additional claims against Montgomery and Mecaj, and to add new, unrelated claims against a host of

4

other Michigan Department of Corrections (MDOC) defendants. (*Id.*). DeAngelo responded, arguing that the motion should be denied because the proposed amended complaint was futile. (ECF No. 52).

On December 9, 2022, the undersigned issued a report and recommendation, recommending that Claybron's motion to amend be granted in part, DeAngelo's motion to dismiss on exhaustion be granted, Claybron's claims against the current defendants—Montgomery, Ransom, Nelson, and Ricumstrict—be allowed to proceed, and to deny the motion to amend insofar as it sought to add unrelated claims against defendants at different facilities. (ECF No. 53). On March 20, 2023, the district court adopted these recommendations and ordered Claybron to file an amended complaint against the remaining defendants. (ECF No. 56). Claybron filed his amended complaint on April 5, 2023. (ECF No. 57).

On August 23, 2023, with Montgomery having not yet appeared and due to the addition of new defendants—Ransom, Nelson, and Ricumstrict—the undersigned entered orders directing the MDOC to provide the U.S. Marshals Service with addresses for these defendants in order to effect service. (ECF Nos. 58 (Montgomery), 59 (Nelson), 60 (Ransom), and 61 (Ricumstrict)). The U.S. Marshals Service acknowledged receipt of the service documents on September 14, 2023. On September 26, 2023, service cards were returned for all defendants. (ECF Nos. 67, 68, 69).

On October 6, 2023, counsel appeared on behalf of Montgomery, Nelson, Ransom, and Ricumstrict, (ECF No. 70), and filed the instant motion for summary judgment on the basis of Claybron's alleged failure to exhaust administrative remedies, (ECF No. 72).

B. Allegations in the Amended Complaint

Claybron alleges that on June 15, 2020, he filed a grievance against Corrections Officer Mecaj for an incident of inappropriate touching.[2] (ECF No. 57, PageID.396). On June 22, 2020, Montgomery conducted a search of Claybron's cell in retaliation for that grievance. (*Id.*). During the search, he broke Claybron's typewriter and glasses and left 70% of Claybron's other property on the floor. (*Id.*). When questioned about this by a sergeant, Montgomery stated that Claybron's cell was in this condition when he began the search. (*Id.*, PageID.396-397). Claybron filed a grievance concerning the search on June 24, 2020. (*Id.*, PageID.397).

On June 29, 2020, Montgomery approached Claybron for another cell search and when Claybron asked to see a supervisor, Montgomery threatened Claybron with segregation. (*Id.*). The threatened search and placement in segregation did not take place. (*Id.*). Then, on July 24, 2020, Montgomery asked Claybron to

---

[2] As noted above, Claybron failed to have Mecaj properly served and Mecaj has been dismissed so any allegations against Mecaj are not at issue.

consent to a pat-down search while he was on his way to receive medical attention. (*Id.*). The pat-down search was eventually conducted by Montgomery's supervisor in order to "avoid any problems." (*Id.*). The next day, on July 25, 2020, Montgomery wrote Claybron up for a "major misconduct" for disobeying a direct order based on his refusal of the pat-down search. (*Id.*, PageID.397-398). After review, the major misconduct ticket was dismissed. (*Id.*, PageID.398).

On August 19, 2020, Montgomery approached Claybron again to conduct a pat-down search. (*Id.*). Ransom approached them to see what the issue was and instructed Claybron to comply with Montgomery's order and file a grievance afterward. (*Id.*). Claybron was then ordered to "cuff up," and Montgomery charged Claybron with a misconduct, which was elevated by Ransom. (*Id.*). When asked why the misconduct was elevated, Ransom responded "[m]aybe some time in segregation will teach you to stop filing grievances on my staff." (*Id.*). Claybron says that he was wrongly found guilty of the misconduct and placed in segregation after the hearing officer refused to investigate his retaliation claims. (*Id.*).

On October 27, 2020, Claybron and an officer "packed and sealed his property while he went on writ to Wayne County jail." (*Id.*, PageID.399). Upon returning on February 19, 2021, Claybron found that his property had been opened against WCC policy and that several items were missing or damaged. (*Id.*). His

7

property was also infested with ants, as sugar had been poured all over it. (*Id.*). He later determined that Inspectors Nelson and Ricumstrict were responsible. (*Id.*).

Claybron filed a grievance about the property damage before he knew who was responsible, and his grievance was resolved at Step I. (*Id.*). Nevertheless, Claybron had not been reimbursed for his damaged and missing property by the date of the amended complaint. (*Id.*).

### III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of

fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Claybron is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

## IV. Exhaustion of Administrative Remedies

### A. Legal Standard

The PLRA requires prisoners to "properly" exhaust all "available" administrative remedies prior to filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."

*Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and citations omitted). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015). Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve prisoner grievances. "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all

those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94. To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007). Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

Under MDOC PD 03.02.130, prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC PD 03.02.130 ¶ S (underscoring omitted).

Furthermore, MDOC PD also 03.02.130 sets forth time limits regarding the three-step grievance process.

> Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, and then may file a

> Step I grievance about any unresolved issues with a grievance coordinator within five business days of the attempted informal resolution. (*Id*. at ¶¶ Q, W.) If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. (*Id*. at ¶¶ U, DD.) If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same procedure. (*Id*. at ¶¶ U, HH.) The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. (*Id*.)

*Moses v. Campbell*, No. 20-cv-13366, 2022 WL 2805145, at *3 (E.D. Mich. July 18, 2022). "Step III grievances are 'generally' responded to within sixty (60) days." *Johnson v. Burt*, No. 1:20-cv-802, 2021 WL 3476449, at *3 (W.D. Mich. June 14, 2021), *report and recommendation adopted*, 2021 WL 3473483 (W.D. Mich. Aug. 6, 2021) (citing MDOC PD 03.02.130 ¶ II). "The grievance process is exhausted once the final response is issued in Step III." *Parker v. Turner*, No. 20-12794, 2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).

B.   Application

Defendants argue that Claybron has failed to exhaust any claims against Ransom, Nelson, and Ricumstrict, and that he has only exhausted his first claim against Montgomery regarding the retaliatory cell search for Claybron's grievance against Mecaj. (ECF No. 72). They have attached Claybron's Step III grievance report, (ECF No. 72-2), which they contend shows that Claybron only exhausted one relevant grievance through Step III of the grievance process. *See* ECF No. 72,

PageID.442-443. This grievance, labeled PRF-20-06- 0120-19e, named Montgomery and Mecaj and was denied at all three steps of the grievance process. (*Id.*).

Defendants have also attached a copy of Claybron's Class I Misconduct Hearing Report for refusing Montgomery's pat-down search (which was elevated to a Class II offense by Ransom), Claybron's request for rehearing, the rehearing decision, and a supporting affidavit from MDOC Department Analyst Carolyn Nelson. (ECF No. 72-3).

Defendants argue that because Claybron failed to grieve all but one claim and failed to raise the issue of retaliation at his misconduct hearing, the majority of his claims are unexhausted and should be dismissed. The undersigned will assess defendants' arguments below, grouped by defendant.

<u>Montgomery and Ransom</u>

*June 22, 2020 and June 29, 2020 incidents*

Defendants contend that all but one of Claybron's claims against Montgomery are unexhausted. Specifically, they point to grievance PRF-20-06-0120-19e as exhausting the claim related to the June 22, 2020 search of Claybron's cell. (ECF No. 72, PageID.442-443).

In contrast, Claybron's claim related to Montgomery's threatened pat-down search on June 29, 2020, has not been exhausted and should therefore be

13

dismissed. The Step III Grievance Report does not show a relevant grievance for this threat, and Claybron does not argue in his response that a grievance pertaining to this incident was filed.

*July 24, 2020 and July 25, 2020 incidents*

The next alleged incident occurred on July 24, 2020, when Montgomery threatened Claybron with another pat-down search that was eventually conducted by Montgomery's supervisor. In retaliation for not allowing Montgomery to conduct the search, Montgomery filed a major misconduct ticket against Claybron on July 25, 2020, which was dismissed. Although it appears that this threatened search is unexhausted, defendants have submitted no evidence regarding the July 25 misconduct ticket, such as the ticket itself or the subsequent hearing report. As explained below, defendants have not carried their burden to show exhaustion.

"When an inmate claims that he received a retaliatory misconduct ticket, he must exhaust the claim by raising the issue through the hearings and appeals process." *Bell v. Admin. Bd. of Claims*, No. 2:20-CV-10193, 2022 WL 17995670, at *4 (E.D. Mich. Sept. 13, 2022), *report and recommendation adopted*, 2022 WL 17995537 (E.D. Mich. Dec. 28, 2022). Decisions made in prisoner misconduct hearings are non-grievable, and where a prisoner asserts that he was given a ticket wrongfully or out of retaliation, he must raise this issue at the initial hearing and again upon application for rehearing or appeal in order to exhaust the claim. *See,*

14

*e.g.*, *Ayotte v. Stemen*, No. 15-13826, 2019 WL 2219739, at *5 (E.D. Mich. Feb. 27, 2019) (citing *Siggers v. Campbell*, 652 F.3d 681, 693-694 (6th Cir. 2011)), *report and recommendation adopted*, 2019 WL 1349607 (E.D. Mich. Mar. 26, 2019).

Defendants only conducted a search of Claybron's misconduct tickets issued "on or around August 19, 2020." (ECF No. 72-4, PageID.494). As a result, defendants did not locate nor submit evidence such as a hearing report establishing that Claybron failed to exhaust his claim that there was a July 25, 2020 misconduct ticket issued in retaliation for his protected conduct. At this stage, any ambiguity must be resolved in favor of the nonmovant. Accordingly, this claim should not be dismissed because defendants failed to carry their burden of establishing lack of exhaustion by a preponderance of the evidence. *See Lee*, 789 F.3d at 677.

*August 19, 2020 incident*

Claybron says that the August 19, 2020 misconduct ticket was issued by Montgomery and elevated by Ransom in retaliation for his protected conduct. For this claim, defendants have submitted the record of the misconduct hearing, request for rehearing, and rehearing decision. (ECF No. 72-3). These documents contain no indication that Claybron raised the issue of retaliation at any stage. (*Id.*). Furthermore, Claybron does not say in his response that he raised the issue of retaliation at any stage. (ECF No. 76). He simply contends that by appealing the

15

misconduct decision to the highest level, he has satisfied the exhaustion requirement.

Accepting Claybron's argument would require ignoring the authority cited above that for a retaliatory ticket claim, the issue of retaliation must be raised at all steps of the hearing process. Otherwise, the MDOC has no avenue through which to address a plaintiff's retaliation claim. As Claybron failed to raise the issue of retaliation during the hearing process, his claim related to the August incident should be dismissed as unexhausted. Because this is Claybron's only claim against Ransom, the undersigned recommends that summary judgment be granted to Ransom and that he be dismissed a defendant.

<u>Ricumstrict and Nelson</u>

Claybron's sole claim against Ricumstrict and Nelson is that they damaged his property sometime between October 27, 2020, and February 19, 2021, while he was on writ at Wayne County Jail. Defendants argue that because the Step III Grievance Report does not show any grievance related to this claim, it must be unexhausted. (ECF No. 72, PageID.452-453). Defendants ignore entirely the allegation in Claybron's amended complaint that he filed a grievance on this issue that was resolved in his favor at Step I. (ECF No. 57, PageID.399). Claybron raised this issue again in his response, citing authority from outside of this circuit stating that a grievance resolved in the inmate's favor exhausts related claims.

16

(ECF No. 76, PageID.507).

Defendants appear to misunderstand Claybron's argument. In their reply, they state that "it is not clear which grievance he is referring to" because "[t]he only grievance Claybron pursued through Step III before he filed his original complaint and which he originally filed at Step I after February 2021 was WCC-21-03-0262-1h (WCC-262)" and "WCC-262 could not have exhausted any claims against Nelson or Ricumstrict because it did not name them as individuals being grieved at Step I, and because it was rejected at Step II as untimely." (ECF No. 77, PageID.512).

Defendants do not contend with the fact that a *successful* grievance at Step I would not be pursued through Step III. The Step III Grievance Report contains *only* those grievances that are pursued through Step III. *See* ECF No. 72-3, PageID.469-470, Defendants' Supporting Affidavit. It is not clear why defendants would expect this allegedly successful Step I grievance to appear on Claybron's Step III report.

Ultimately, "[a] grievance resolved at Step I is exhausted because MDOC P.D. 03.02.130 only contemplates an appeal to Step II when a prisoner is dissatisfied with the Step I response." *McClaine-Bey v. Bury*, No. 2:20-CV-162, 2022 WL 508839, at *5 (W.D. Mich. Jan. 18, 2022), *report and recommendation adopted*, 2022 WL 504618 (W.D. Mich. Feb. 18, 2022) (citing *Braddock v.*

17

*Crompton*, No. 1:10-CV-731, 2015 WL 6040307, at *2 (W.D. Mich. Oct. 15, 2015); *Manning v. Dolce*, No. CIV.A09-13840, 2010 WL 3515718, at *3 (E.D. Mich. July 12, 2010), *report and recommendation adopted*, 2010 WL 3515715 (E.D. Mich. Sept. 8, 2010)). Here, defendants have failed to counter Claybron's claim that he filed a grievance that was resolved at Step I regarding the destruction and loss of his property. Therefore, defendants have failed to carry their burden of establishing lack of proper exhaustion as to the claim against Ricumstrict and Nelson. Accordingly, this claim should survive summary judgment.

V. Conclusion

For the reasons stated above, the undersigned RECOMMENDS that defendants' motion for summary judgment, (ECF No. 72), be GRANTED IN PART and DENIED IN PART. Specifically, as previously noted, the claims against Montgomery for his June 22, 2020 cell search and July 25, 2020 misconduct ticket and the sole claim against Nelson and Ricumstrict related to Claybron's damaged and missing property should survive summary judgment based on exhaustion. The other claims against Montgomery, regarding his threatened pat-down searches and the August 19, 2020 misconduct ticket, and his claim against Ransom for elevating that misconduct ticket should be DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies.

If these recommendations are adopted, the undersigned will enter a

scheduling order to allow for discovery on the merits of the case.

Dated: April 15, 2024  s/Kimberly G. Altman
Detroit, Michigan  KIMBERLY G. ALTMAN
United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 15, 2024.

s/Carolyn M. Ciesla
CAROLYN M. CIESLA
Case Manager
