UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOVAN CLAYBRON,

       Plaintiff,                    Case No. 21-cv-11953

v.                                    HON. MARK A. GOLDSMITH

OFFICER MONTGOMERY et al.,

       Defendants.
_____/

**OPINION & ORDER
GRANTING MOTION FOR SUMMARY JUDGMENT (Dkt. 89)**

The matter before the Court is Defendants' second motion for summary judgment (Dkt. 89). For the reasons that follow, the Court grants the motion.[1]

## I. BACKGROUND

The full relevant factual background is set forth in the magistrate judge's report and recommendation granting in part and denying in part Defendants' initial motion for summary judgment (Dkt. 78). Plaintiff Jovan Claybron is currently a prisoner at the Woodland Center Correctional Facility in Whitmore Lake, Michigan. See R&R at 1. He brings claims against Michigan Department of Corrections (MDOC) Defendants Emmanuel Montgomery, Michael Nelson, E. Ransom, and Donald Ricumstrict, alleging constitutional violations. Id. at 1–2.

Defendants filed an initial motion for summary judgment based on exhaustion, arguing that Claybron failed to exhaust his claims against them. See Initial Mot. for Summ. J (Dkt. 72). The

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).

Court granted the motion in part, disposing of some claims and defendants. 5/20/24 Op. & Order (Dkt. 81). What remains in the case are Claybron's claims based on two alleged incidents: (i) with respect to Montgomery, Claybron alleges that he was subjected to a June 22, 2020 retaliatory cell search; and (ii) with respect to Nelson and Ricumstrict, Claybron alleges that they damaged his property sometime between October 2020 and February 2021 while he was on writ at Wayne County Jail. Am. Compl. at PageID.396–399.

Defendants filed a second motion for summary judgment as to all remaining claims (Dkt. 89). Claybron has not filed a response.

## II. ANALYSIS[2]

### A. First Amendment Retaliation Claims

Claybron appears to bring First Amendment retaliation claims based on both sets of allegations. To succeed on these claims, Claybron must show that (i) he engaged in protected conduct; (ii) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (iii) there is a causal connection between elements one and two. See Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999). As explained below, the Court finds that Claybron has failed to satisfy these requirements with respect to either claim.

---

[2] In assessing whether a party is entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). A court will grant a motion for summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1985).

### 1. Defendant Montgomery: Cell Search

Claybron alleges that Montgomery conducted a retaliatory cell search against him, during which Montgomery allegedly broke Claybron's typewriter and glasses and left 70% of Claybron's other property on the floor. Am. Compl. at PageID.396. Montgomery counters Claybron's portrayal of this alleged adverse action, stating in his declaration that he "did not intentionally or maliciously destroy any of Claybron's property and did [his] best to leave the cell in a similar condition to when [he] entered" it. Montgomery Decl. ¶ 14 (Dkt. 89-3).

Claybron's alleged protected activity was a grievance he initiated against Officer Mecaj for "inappropriate touching," filed a week before Montgomery searched his cell.[3] Am. Compl. at PageID.396. The Sixth Circuit has recognized that "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000). Defendants argue that Claybron's grievance against Mecaj is not protected conduct because it was frivolous. Def. Mot. for Summ. J. at 9–10 (citing Clark v. Johnston, 413 F. App'x 804, 812 (6th Cir. 2011) ("[A]n inmate's pursuit of grievances against prison officials can constitute protected conduct for purposes of a retaliation claim, but only to the extent that the underlying claims have merit.") (punctuation modified)). However, as explained below, because the Court finds the First Amendment claim fails at the causal connection step, it need not decide whether Claybron's grievance against Mecaj constitutes protected conduct.

To establish causal connection between the protected activity and the adverse action, "[t]he defendant must have known about the protected activity in order for it to have motivated the adverse action." Thaddeus-X, 175 F.3d at 386–387 n.3. Montgomery argues he had no knowledge

---

[3] While Mecaj was initially a defendant in this lawsuit, Claybron failed to properly serve him and Mecaj was subsequently dismissed. See 10/5/22 Order (Dkt. 47).

3

of Claybron's grievance against Mecaj. Def. Mot. for Summ. J. at 13–14. Claybron's complaint appears to contend that the causal connection can be found in Montgomery's statement, allegedly made when he entered Claybron's cell to begin the search: "So you like the file PREA grievances on my buddies? I'll teach you a lesson." PageID.396. However, he provides no affidavits or other admissible evidence to support this allegation. Refuting Claybron's allegation, Montgomery states in his declaration that at no point during the search was he "aware of or influenced by any grievances Claybron may or may not have initiated against [himself] or any other MDOC employee." Montgomery Decl. ¶ 19. Defendants further note that the grievance Claybron initiated against Mecaj was initiated under the PREA, and such grievances are kept confidential. Def. Mot. for Summ. J at 13; Montgomery Decl. ¶ 20.

Further, even if the Court were to accept Claybron's allegations in his complaint that Montgomery was motivated to conduct the cell search by Claybron's grievance against Mecaj, Claybron's claim would still fail, as Montgomery has put forth evidence of a non-retaliatory motive for the search. See Maben v. Thelen, 887 F.3d 252, 267 (6th Cir. 2018) (explaining that, where a plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind the adverse action, "[i]f the defendant can show that he would have taken the same action in the absence of the protected activity, [the defendant] is entitled to prevail on summary judgment"). Here, Montgomery states in his declaration that he was "ordered to search Claybron's cell looking for a cellular phone as there was reason to suspect Claybron may have been in possession of a cellular phone at that time." Montgomery Decl. ¶ 11.

Because Claybron has failed to show a causal connection between the alleged protected behavior and alleged adverse action, and because Montgomery has provided evidence of a non-

4

retaliatory motive for the alleged adverse action, the Court grants summary judgment in favor of Montgomery as to Claybron's First Amendment claim based on the June 2020 cell search.

**2. Defendants Nelson and Ricumstrict: Property Damage**

Claybron also alleges that Nelson and Ricumstrict took a retaliatory adverse action against him. On October 27, 2020, Claybron and an officer "packed and sealed his property while he went on writ to Wayne County jail." Am. Compl. at PageID.399. Claybron alleges that, upon returning from writ on February 19, 2021, he found that his property had been opened and that several items were missing or damaged. Id. He adds that his property was also infested with ants, as sugar had been poured all over it. Id. Claybron alleges that Nelson and Ricumstrict were responsible for this property damage. Id.

Claybron's First Amendment retaliation claim based on these allegations fails, as he has not even alleged two out of the three required elements. While Claybron describes the property damages as "an adverse action that would deter a person of ordinary firmness from continuing to file grievances," he has alleged no protected activity and no causal connection. Am. Compl. at PageID.399. He fails to specify any grievance he might be claiming as protected activity and offers no explanation as to why Nelson and Ricumstrict may have damaged his property. Claybron states only that, at some point, he "discover[ed] that Inspector Nelson and Inspector Ricumstrict were responsible for damaging his property" and that he "secured several affidavits from inmates who witnessed both inspectors searching through [Claybron's] property while he was on writ." Am. Compl. at PageID.399. The Court grants summary judgment in favor of Nelson and Ricumstrict as to the First Amendment retaliation claim based on the property damage that occurred while Claybron was on writ to Wayne County jail.

**B. Due Process Claim**

Claybron alleges that Nelson and Ricumstrict deprived him of his property without due process of law. Am. Compl. at PageID.400. This claim is based on the same allegations of property damages as discussed above in Section II.A.2. The Supreme Court has held that negligent deprivation of a prisoner's property does not violate due process if adequate state remedies are available to redress the wrong. See Parratt v. Taylor, 451 U.S. 527 (1981). That rule has been extended to cover intentional deprivations of property as well. See Hudson v. Palmer, 468 U.S. 517, 533 (1984). This doctrine permits dismissal of procedural due process claims brought under 42 U.S.C. § 1983 based on the fact that the state provides the claimant an adequate post-deprivation remedy if: (i) the deprivation was unpredictable or "random"; (ii) pre-deprivation process was impossible or impracticable; and (iii) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty. Copeland v. Machulis, 57 F.3d 476, 479 (6th Cir. 1995).

These requirements for rejecting the due process claim are alleged here. Claybron has not argued that there was an inadequate post-deprivation remedy for his property damage. As Defendants point out, MDOC has a post-deprivation process in place that Claybron did take advantage of in this specific scenario, namely, the prisoner grievance process. Mot. for Summ. J. at 17. Claybron filed a grievance regarding his property damage, which was sustained. Am. Compl. at PageID.399. The State of Michigan has additional post-deprivation processes. Some of these, such as Mich. Compl. L § 600.2920 (providing for a civil action to recover possession of or damages for goods unlawfully taken) and Mich. Ct. R. 3.105 (providing for actions for claim and delivery) have been labeled "adequate post-deprivation remedies" in this context by the Sixth Circuit. See Copeland, 57 F.3d at 480.

Because Claybron has offered no evidence to show—and has not even alleged—that there are inadequate post-deprivation remedies in place, the Court grants summary judgment in favor of Nelson and Ricumstrict on his procedural due process claim.

### C. Civil Conspiracy Claims

Claybron claims that Nelson and Ricumstrict entered into a civil conspiracy to (i) deprive Claybron of his property without due process of law and (ii) destroy his property in retaliation for Claybron's filing of unspecified grievances.[4] It is unclear whether Claybron's conspiracy claim is a federal conspiracy claim brought under 42 U.S.C. § 1985 or a state-law civil conspiracy claim. Either way, the Court grants summary judgment in favor of Nelson and Ricumstrict on his procedural due process claim. Where, as here, a court finds no violations of federal law, there is no basis for a § 1985 civil conspiracy claim. See Rodrigues v. Martin Marietta Corp., Master Builders Div., 829 F.2d 39 (6th Cir. 1987) (holding that where the plaintiff could not establish a violation of any federal right, he had no basis for a conspiracy claim under § 1985). And, because the Court grants Defendants' motion for summary judgment with respect to all federal claims, it will use its discretion to decline to exercise supplemental jurisdiction over any remaining state-law claim. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726–727 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

### III. CONCLUSION

For the reasons stated above, the Court grants Defendants' motion for summary judgment (Dkt.89).

SO ORDERED.

---

[4] Because the Court finds that Claybron cannot establish any violations of federal law, it need not address Defendants' arguments that they are entitled to qualified and sovereign immunity.

Dated: August 26, 2024  s/ Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge